## PUEYO *v.* REAL HERMANOS.

APPEAL from the District Court of San Juan, Section 1.

No. 833.—Decided November 7, 1912.

CONTRACTS—PENAL CLAUSE IN CONTRACTS—CONTRACT FOR SERVICES—INDEMNITY IN CASE OF RESCISSION OF CONTRACT.—The provisions of section 1121 of the Revised Civil Code are applicable only to cases where one of the parties can be forced to fulfil the contract. When, on the contrary, the case is one of a contract of a personal character, as are contracts for services, and when the contract contains a penal clause, the party rendering the services has the right to claim only the amount of indemnity stipulated in the contract, and cannot demand an indemnity greater than that agreed upon, therefore in such a case the provisions of section 1121 of said Civil Code are inapplicable.

ID.—FULFILMENT OF CONTRACT—DAMAGES FOR NONFULFILMENT OF CONTRACT.— Section 1091 of the Revised Civil Code, which allows the injured party to elect between the fulfilment of the contract and indemnity for damages, is not applicable to a contract containing a penal clause of a personal character wherein the parties have agreed upon a penalty in case of nonfulfilment of the contract.

ID.—DAMAGES FOR NONFULFILMENT OF CONTRACT—AMERICAN JURISPRUDENCE.— When from the terms of a contract it is clearly shown that the intention of the parties was to agree on a fixed sum as indemnity for damages in case of nonfulfilment of the contract, the American courts will not override the plain intention of the parties unless the amount is unconscionable, excessive, or against good morals.

The facts are stated in the opinion.
*Mr. Luis Llorens Torres* for appellant.
*Mr. José de Guzmán* for respondents.
MR. JUSTICE WOLF delivered the opinion of the court.
In the city of San Juan, Porto Rico, on the first day of

May, 1911, Julián Pueyo Cámara made a contract with the
firm of Real Hermanos for the hiring of his services, and it
was stated in the agreement that if the contract should be
rescinded through the fault of Messrs. Real Hermanos, the
latter should be obliged to pay to Mr. Pueyo the sum of $88, as
damages (*en concepto de indemnización*). The contract was
carried out by both parties until July 31, 1911; but, on August
1, 1911, the defendants and appellees, Real Hermanos, with-
out assigning any excuse therefor, notified the complainant
and appellant in writing that the work that he was doing as a
draughtsman in the office of the *Puerto Rico Ilustrado,* the
property of the appellees, had come to an end. In this notifica-
tion, the appellees advised the appellant that he could receive
the sum of $88 in accordance with the agreement in the penal
clause of said contract. As the appellant did not agree with
this course of conduct, on August 2, 1911, he notified Real
Hermanos verbally and in writing that he did not agree to
the rescission of the contract; but, on the contrary, elected
that the same should be fulfilled and refused to accept the
sum which was offered him as compensation for the damages
which might arise from a breach in accordance with the agree-
ment in the penal clause. The defendants and appellees re-
fused to go on with the contract, and Mr. Pueyo began a com-
plaint before the District Court of San Juan, alleging that by
reason of the breach on the part of the defendants he was
deprived of $75 a month for the 19 months which were
lacking to terminate the contract. The District Court of San
Juan found in favor of the defendants.

The appellant, to maintain his appeal, placed his principal
reliance on section 1121 of the Civil Code. Properly to con-
strue this section, it must be read in connection with section
1120:

"Section 1120.—In obligations with a penal clause the penalty
shall substitute indemnity for damages and the payment of interest
in case of nonfulfilments, should there be no agreement to the
contrary.

"This penalty can only be enforced when it is demandable in accordance with the provisions of this code.

"Sec. 1121.—The debtor cannot exempt himself from the fulfilment of the obligation by paying the penalty, unless such right has been expressly reserved to him. Neither may the creditor exact the fulfilment of the obligation and also the payment of the penalty, unless such right has been clearly granted him."

We take it that the words of section 1121 mean that a party to a contract may insist upon the performance of a contract even if there is a penal clause, always provided, however, that the contract is susceptible of specific performance. Section 1121 necessarily only applies to that class of contracts where the law can enforce their fulfilment. When the contract can not be enforced, the complaining party is placed in the situation described by the commentators, and by the court below. In this regard, Manresa says:

"We believe, in general intendment of the law, and if an obligation is unfulfilled, that the creditor may elect between losing the penalty and the performance of the contract, with this difference, however, that if he seeks the former he will not be able thereafter to insist on the second, inasmuch as both contracting parties have agreed upon a rescission of the contract; but, on the other hand, electing to insist upon the performance of the contract, he may ask, if the contract is not performed, the payment of the penalty."

And Scaevola, in Volume XIX, page 837 of his Commentaries to the Civil Code is of the opinion that the parties are bound by their contract, and that, as the parties foresaw the possible breach of the principal obligation and agreed upon the amount of the compensation which the creditor should receive, there is no way of taking the parties out of the situation in which they have placed themselves.

The terms of the contract show that the compensation intended by the parties in the case of breach by the appellee, was $88. If, as appellant maintains, he might insist upon the performance of the contract; and, on the failure of defend-

ants to perform, recover for damages, he would be substituting another contract for the one the parties really signed. The minds of the parties met when they fixed upon the sum of $88 as a payment for the breach.

Appellant cites section 1091 of the Civil Code, which is the general clause enabling the contracting party to elect between the performance of a contract and the payment of damages, but this section only applies when the parties have made no agreement whereby the damages are to be estimated.

The appellant made some reference to American cases. Strictly speaking, the sum mentioned in this contract, under the American system, would be regarded as liquidated damages rather than a penalty. When the contracting parties say that $88 shall be compensation for any failure to perform through the fault of Real Hermanos, the $88 would seem to be the entire measure of damages. The matter is well discussed in the case of *K. P. Mining Co.* v. *Jacobson,* 4 L. R. A., N. S. 757, 758. A citation from 13 Cyc., p. 90, is particularly appropriate:

"The contract is to govern; and the true question is, What was the contract? Whether it was folly or wisdom for the contracting parties thus to bind themselves is of no consequence if the intention is clear. If there be no fraud, circumvention, or illegality in the case the court is bound to enforce the agreement."

Compensation is the underlying idea, and where the parties have agreed on the measure of the damages, and it is not unconscionable, excessive, or against good morals, the courts will not override the plain intention of the contracting parties.

The judgment must be affirmed.

*Affirmed.*

Justices MacLeary, del Toro and Aldrey concurred.

Chief Justice Hernández did not take part in the decision of the case.